## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN DOE,

                Plaintiff,

    v.

APPLICATION PROCESSING
SERVICE, INC.,

                Defendant.

Civil Action No.: 8:25-cv-02758

**JURY TRIAL DEMANDED**

## COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against Application Processing Service, Inc., ("Defendant" or "APS") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report ("consumer report") that Defendant published to Plaintiff's potential Home Owners Association ("HOA") which contained numerous different inaccuracies.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.    Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also

1

known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant assembled and published an inaccurate consumer report to Plaintiff's prospective landlord, which reported the following: (1) an expunged criminal case, triplicated; (2) a sealed criminal case, duplicated; (3) a criminal case wherein adjudication was withheld, duplicated; and (4) two civil traffic infractions older than seven years.

4.     Plaintiff's housing application was denied after the HOA received the consumer report from Defendant, in which Defendant published the inaccurate criminal and traffic records.

5.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Hillsborough County and Manatee County, Florida, as well as Marion County, Indiana regarding the criminal and traffic records prior to publishing the information to Plaintiff's prospective HOA.

6.     Had Defendant performed even a cursory review of the public court records, it would have discovered that (1) the Marion County, Indiana criminal case had been expunged; (2) the first Hillsborough County, Florida criminal case had been sealed; (3) adjudication was withheld in the second Hillsborough County,

2

Florida criminal case; and (4) the civil traffic offenses from Manatee County, Florida were older than seven years and prohibited from reporting under the FCRA.

7.    Further, Defendant would have discovered that it had triplicated the expunged Marion County, Indiana criminal case and duplicated the Hillsborough County, Florida criminal cases, making it appear as though Plaintiff had four more criminal cases (and twelve more criminal charges) than he actually had.

8.    The aforementioned criminal cases and civil traffic infractions will be referred to collectively as the "Disputed Records."

9.    Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

11.    Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

12.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the

3

expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the Disputed Records– were inaccurate and should be corrected in the subject tenant screening report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

14.     John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Riverview, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Application Processing Services, Inc. ("Defendant" or "APS") is a Florida corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 205 Flagship Drive, Suite 3, Lutz, Florida 33549.

16.     Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a

prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for consumer purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Further, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

5

21.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

22.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23.    Consumer reports that contain factually incorrect information are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendant prepared in Plaintiff's name.

25.    The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

26.    In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

27.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31.    In the tenant screening industry, consumer reports are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating consumer reports.

32.    Consumer Reporting Agencies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

7

33.     Given that Defendant is in the business of selling consumer reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

34.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting numerous records that should not have been reported at all, erroneously reporting duplicate/triplicate entries, and reporting dispositions in a materially misleading manner.

38.     As a provider of consumer reports, Defendant should be aware of the FCRA requirements and should be a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

39.    In February 2025, Plaintiff's long-term partner/fiancé and the mother of his eleven-year-old tragically passed away from cancer.

40.    Thereafter, Plaintiff struggled to afford their apartment on his own.

41.    Accordingly, and in part because Plaintiff's daughter was starting at a new school in August 2025, Plaintiff began searching for a more affordable rental home that was closer to the new school.

42.    Plaintiff hoped that he and his daughter would be able to start fresh in a new home.

### Plaintiff Applies for a Rental Unit with HomeRiver Group

43.    In or around late July 2025, Plaintiff located a rental unit that was affordable and in the perfect location, five minutes from his daughter's school. The unit had two bedrooms and three bathrooms which was just what he and his daughter needed.

44.    Moreover, the rental unit was available starting August 10, 2025. This was the perfect timing for Plaintiff as it was just before his daughter's school went into session.

45.    On or about August 1, 2025, Plaintiff submitted an online application and paid a $75 application fee.

46.    On or about August 5, 2025, Plaintiff received notice from the property management company, HomeRiver Group ("HomeRiver"), that his initial application had been approved.

9

47.    Thereafter, Plaintiff was instructed that he'd need to pay $1,462.45 prior to move in, and a lease was sent to him for his signature.

48.    HomeRiver also informed Plaintiff that because the rental unit was governed by the Villages of Bloomingdale Homeowners Association ("HOA"), that in order to move in, Plaintiff would also have to apply with the HOA.

49.    On or about August 6, 2025, Plaintiff completed the HOA application, paid an additional $250 application fee, and delivered the application to the HOA in-person.

50.    On or about August 8, 2025, Plaintiff followed up with HomeRiver concerning the status of his HOA application.

51.    Plaintiff was informed that his application was still pending with the HOA, and accordingly, he could not move in just yet.

**Defendant Published an Inaccurate Consumer Report to the HOA**

52.    The HOA contracted with Defendant to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to live at a unit within the HOA.

53.    On or about August 8, 2025, the HOA ordered a consumer report on Plaintiff from Defendant.

54.    That same day, August 8, 2025, Defendant sold a consumer report about Plaintiff to the HOA, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

55.    The tenant screening report is a consumer report regulated by the FCRA.

56.    Within that consumer report, Defendant published inaccurate information about Plaintiff.

57.    Defendant's consumer report about Plaintiff included (1) an expunged criminal case; (2) a sealed criminal case; (3) a criminal case wherein adjudication was withheld; and (4) two civil traffic infractions older than seven years.

58.    More specifically, Defendant reported the following:

     a.    An expunged criminal case, with four charges, from Marion County, Indiana (which was reported three times);

     b.    A sealed criminal case, with two charges, from Hillsborough County, Florida (which was reported two times);

     c.    A criminal case, with two charges, from Hillsborough County, Florida, with a disposition of "NTAW" (which was reported two times);

     d.    A 2015 civil traffic offense from Manatee County, Florida; and

     e.    A 2017 civil traffic offense from Manatee Couty, Florida.

59.    The aforementioned Disputed Records are inaccurate.

60.    The Marion County, Indiana criminal case was ***expunged*** on May 5, 2021.

61.    Accordingly, at all times after May 5, 2021, the criminal case was prohibited from reporting under the FCRA.

62.    Regardless, three of the four charges were dismissed, and older than ten years, and prohibited from reporting under the FCRA.

63.    Furthermore, Defendant's reporting of the record more than once is also patently inaccurate.

64.    The first Hillsborough County, Florida criminal case was ***sealed*** on September 4, 2024.

65.    Accordingly, at all times after September 4, 2024, the criminal case was prohibited from reporting under the FCRA.

66.    Regardless, the criminal case was reported with a disposition of "NTLOR," which is, at minimum, materially misleading because "NTLOR" is not a commonly known acronym. Therefore, the reporting of the disposition of the charges is unclear.

67.    "NTLOR" means NT-Letter of Release, or that the prosecution decided not to pursue the charges.

68.    Furthermore, Defendant's reporting of the record more than once is also patently inaccurate.

69.    The second Hillsborough County, Florida criminal case was reported with a disposition of "NTAW."

70.    Such reporting is, at minimum, materially misleading because "NTAW" is not a commonly known acronym. Therefore, the reporting of the disposition of the charges is unclear.

71.    "NTAW" means that adjudication was withheld, that the court withheld any finding of guilt.

72.    Furthermore, Defendant's reporting of the record more than once is also patently inaccurate.

73.    Defendant also reported two civil traffic infractions violations from 2015 and 2017 that are over seven years old and prohibited from reporting under the FCRA. *See*, 15 U.S.C. § 1681c.

74.    A cursory review of the widely available public court records confirms that Defendant was reporting expunged and sealed records, as well as records over seven years old, that were all prohibited from appearing under the FCRA.

75.    A cursory review of the widely available public court records confirms that Defendant was reporting duplicate and triplicate entries of the cases, making it appear as though Plaintiff had four more cases (and twelve more charges) than he actually had.

76.    A cursory review of the widely available public court records confirms that Defendant was reporting the two Hillsborough County, Florida cases with unclear dispositions.

77.    The sole reason the above-mentioned criminal and traffic records were reported inaccurately was that Defendant failed to follow reasonable procedures to

assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective HOA.

78.    Had Defendant followed reasonable procedures, it would have discovered that it was (1) reporting duplicate and triplicate records; (2) reporting expunged and sealed criminal records, as well as two traffic infractions older than seven years, that were prohibited from being reported; and (3) reporting unclear dispositions for the Hillsborough County, Florida cases, and that it should not have reported the same.

79.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective HOA the inaccurate Disputed Records, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### HomeRiver Denies Plaintiff's Housing Application

80.    On or about August 11, 2025, Plaintiff began receiving notices of late fees that were assessed to his account because Plaintiff had not paid his balance due at move in (even though he was not yet allowed to move-in).

81.    Plaintiff's account was assessed late fees every day, and he received emails about being late every day, between August 11-15, 2025.

82.    On or about August 15, 2025, Plaintiff was notified by HomeRiver via email that his housing application was denied as a direct result of the background report published by Defendant.

83.    Plaintiff was shocked and disappointed.

84.    Shortly thereafter, Plaintiff obtained a copy of the consumer report and was shocked and humiliated upon reviewing the inaccurate consumer report.

85.    Plaintiff contacted HomeRiver and informed them that his background check contained inaccurate information.

86.    Plaintiff also informed HomeRiver that he would be disputing the Disputed Records with Defendant.

87.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting, both in relation to the HomeRiver rental unit, but also the impact of the same on his future.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

88.    On or about August 15, 2025, desperate to secure housing with HomeRiver and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

89.    Plaintiff identified himself and provided information to Defendant to support his dispute.

90.    Plaintiff specifically disputed the inaccurate reporting of the Disputed Records.

91.    Plaintiff specifically asked Defendant to investigate and correct its reporting in any consumer report about Plaintiff.

/ /

**Defendant Refused to Conduct a Reasonable Reinvestigation and Correct the Consumer Report**

92.    During Plaintiff's dispute call, on August 15, 2025, Defendant told Plaintiff that it would not reinvestigate his dispute.

93.    Specifically, Defendant informed Plaintiff that if Defendant was able to find the information online, then it was allowed to report such information.

94.    Defendant refused to conduct any reinvestigation whatsoever and failed to issue a corrected consumer report to the HOA.

95.    Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's August 2025 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

96.    Because Defendant failed to conduct an investigation of any sort, Defendant failed to issue a corrected consumer report and the HOA did not reconsider its decision to deny Plaintiff's rental application.

97.    Upon information and belief, but for Defendant's inaccurate consumer report, Plaintiff's housing application would have been approved, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

98.    Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to his daughter's new school.

16

99.    Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek housing, Plaintiff was left without a place to live.

100.    As Plaintiff had already given notice that he was moving out to his landlord, Plaintiff and his daughter were left with nowhere to live and forced to leave their apartment.

101.    Since being forced out of their home, Plaintiff and his daughter have been staying with a family member, with Plaintiff's daughter sleeping on an air mattress and Plaintiff sleeping on the couch. This property is also thirty minutes from Plaintiff's daughter's school, as opposed to the five minutes the HomeRiver property was.

102.    As Plaintiff had already packed up his rental in anticipation of moving into the HomeRiver property, Plaintiff was forced to incur the cost of renting two storage units (approximately $300 per month).

103.    Further, while Plaintiff was refunded the $75 application fee with HomeRiver, he was not refunded the $250 application fee with the HOA.

104.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

105.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing

opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

106.    Further, Plaintiff spent time and money securing court records concerning the Florida cases.

107.    Plaintiff is also incredibly embarrassed and humiliating by having to explain criminal records that he otherwise should not have had to explain.

108.    Plaintiff also feels as though he has disappointed his daughter, and that he is failing as a father.

109.    Plaintiff has suffered from significant emotional distress which has led to sleepless nights and headaches.

<u>CLAIMS FOR RELIEF</u>
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

110.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-87 and 97-109 as if fully stated herein.

111.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

112.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18

113.   At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

114.   Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

115.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

116.   Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

117.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

/ /

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

118.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-38, 52-78, and 88-109 as if fully stated herein.

119.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.    See 15 U.S.C. § 1681i(a)(1).    The Act imposed a 30-day time limit for the completion of such an investigation.    *Id.*

120.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.    *See* 15 U.S.C. § 1681i(a)(5)(A).

121.    On at least one occasion during 2025, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the tenant screening report that is patently inaccurate, misleading, and highly damaging to him, namely, the Disputed Records.

122.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false,

logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

123.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

124.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

125.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

126.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of October 2025.

By: */s/ Catherine Tillman*
Catherine Tillman, FL Bar No. 0057663
**Consumer Justice Law Firm PLC**
8095 North 85th Way
Scottsdale, Arizona 85258
Phone: (941) 263-7310
Fax: (480) 613-7733
Email: ctillman@consumerjustice.com

*Attorneys for Plaintiff John Doe*